UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| SCOTT EDWARD ICKES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:20-cv-432-JPK |
| KILOLO KIJAKAZI[1], Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Scott Edwards Ickes filed the present complaint seeking judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying his Title II application for Disability Insurance Benefits ("DIB"). *See* 42 U.S.C. § 405(g). The parties have consented to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment. *See* [DE 10]. Accordingly, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c). After carefully considering the Administrative Record [DE 17] and the parties' briefs [DE 21, 22], the Court now affirms the Commissioner's decision.

## BACKGROUND

Plaintiff filed an application for Social Security disability benefits on December 5, 2019, alleging an inability to work beginning on March 10, 2008 due to heart attack, End-Stage Renal Disease (ESRD), depression, social affective disorder, diabetic neuropathy, Degenerative Disc

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security effective July 9, 2021, replacing the former commissioner, Andrew M. Saul. *See* Fed. R. Civ. P. 25(d).

Disease (DDD), chronic pain, hypertension, and high cholesterol. [AR[2] 131]. Plaintiff reported that he had quadruple bypass surgery for a heart attack in November 2019, which was followed by in-patient rehabilitative care, and that he was on dialysis three times a week for stage 4 kidney disease. [AR 289, 293].

On January 16, 2020, the Social Security Administration ("SSA") notified Plaintiff that his request for Supplemental Security Income ("SSI") had been granted based on an agency determination at the initial level that, as of the application date,[3] he met the criteria for Listing 6.03, Chronic Kidney Disease with Dialysis, leading to a finding of presumptive disability. [AR 119-126, 150-163]. Plaintiff's request for DIB benefits beginning on the alleged onset date of March 10, 2008 through the last insured date of June 30, 2013, however, was denied at the initial level on January 9, 2020 [AR 117-118], and at the reconsideration level on February 17, 2020 [DE 129]. Plaintiff filed a written request for a hearing before an administrative law judge (ALJ) on his DIB claim, which was held on July 23, 2020. [AR 32-64].[4] On August 4, 2020, the ALJ issued a

---

[2] The referenced page numbers in the Administrative Record ["AR"] are to the numbers assigned by the filer at the lower right corner of the page.

[3] When a claimant files an application for SSI in the month that he meets all the other requirements for eligibility, the earliest month for which the SSA can pay him SSI is the month following the month he filed the application. *See* 20 C.F.R. § 416.335.

[4] Plaintiff had previously filed an SSI application on December 2, 2016, which an ALJ denied by a written decision on November 29, 2018. [AR 68-82]. The ALJ's decision acknowledged Plaintiff's coronary artery disease, neuropathy, diabetes mellitus, and chronic kidney disease, but concluded that Plaintiff was not under a disability at any time since the December 2, 2016 application date. [AR 78]; *see* footnote 3, *supra*. That decision was affirmed upon subsequent judicial review. *See Ickes v. Saul*, No. 1:20-cv-4-PPS, 2021 WL 856234 (N.D. Ind. Mar. 8, 2021), *appeal dismissed sub nom.*, *Ickes v. Kijakazi*, No. 21-1811, 2021 WL 5381192 (7th Cir. July 23, 2021). Although the prior ALJ decision is included in the current record, the ALJ noted at the hearing on Plaintiff's current DIB application that the previous ALJ decision had not addressed any request by Plaintiff for DIB benefits, and further stated that a new and independent determination would be made on Plaintiff's then-pending DIB application that was not tied to any prior determinations that had been made in the past. [AR 36-37].

written decision finding Plaintiff was not disabled between March 10, 2008 and June 30, 2013, thus denying Plaintiff's request for DIB benefits in that time period. [AR 15-26]. This appeal followed.

## FIVE-STEP EVALUATIVE PROCESS

To be eligible for Social Security disability benefits, a claimant must establish that he suffers from a "disability," which is defined as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The ALJ follows a five-step inquiry to determine whether the claimant is disabled. The claimant bears the burden of proving steps one through four, whereas the burden of proof at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001).

At the first step, the ALJ asks whether the claimant has engaged in substantial gainful activity during the claimed period of disability. An affirmative answer at step one results in a finding that the claimant is not disabled and the inquiry ends. If the answer is no, the ALJ moves on to the second step, where the ALJ identifies the claimant's physical or mental impairments, or combination thereof, that are severe. If there are no severe impairments, the claimant is not disabled. If there are, the ALJ determines at the third step whether those severe impairments meet or medically equal the criteria of any presumptively disabling impairment listed in the regulations. An affirmative answer at step three results in a finding of disability and the inquiry ends. Otherwise, the ALJ goes on to determine the claimant's residual functional capacity (RFC), which is "an administrative assessment of what work-related activities an individual can perform despite his limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). At the fourth step of

the inquiry, the ALJ determines whether the claimant is able to perform past relevant work given the claimant's RFC. If the claimant is unable to perform past relevant work, the ALJ determines, at the fifth and final step, whether the claimant is able to perform any work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). A positive answer at step five results in a finding that the claimant is not disabled while a negative answer results in a finding of disability. *See Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005); 20 C.F.R. § 404.1520(a)(4).

## THE ALJ'S DECISION

The ALJ made the following findings relevant to Plaintiff's arguments in this appeal:[5]

> 1. The claimant last met the insured status requirements of the Act on June 30, 2013.
>
> 2. The claimant did not engage in substantial gainful activity during the period beginning on the alleged onset date of March 10, 2008 and ending on the last insured date of June 30, 2013.
>
> 3. Through the last insured date of June 30, 2013, the claimant had the following severe impairments: diabetes mellitus; lower back pain; hypertension; mild to moderate obesity; depressive disorder; and anxiety disorder.
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.
>
> 5. The claimant has the residual functional capacity to perform light work subject to the following additional limitations: Only occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; never climbing ladders, ropes, or scaffolds. Claimant needs to avoid concentrated exposure to hazards, including operational control of dangerous moving machinery, unprotected heights, and slippery, uneven, or moving surfaces. Mentally, the claimant can only have superficial interactions with supervisors, coworkers, and the general public,

---

[5] The paragraphs listed herein correspond with the paragraphs in the ALJ's decision.

>defined as occasional and casual contact with no prolonged conversations.
>
>6. Through the date of last insured, the claimant was capable of performing past relevant work as a Stocker and Inventory Clerk. This work did not require the performance of work–related activities precluded by claimant's residual functional capacity. In the alternative, based on the testimony of a vocational expert, through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy, including the jobs of Small Products Assembler, Cleaner, and Marker/Retailer.
>
>7. The claimant was not under a disability as defined in the Act at any time from March 10, 2008, the alleged onset date, through June 20, 2013, the date last insured.

*See* [AR 15-26].

## **STANDARD OF REVIEW**

The question before the Court upon judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g) is not whether the claimant is in fact disabled, but whether the ALJ's decision "applies the correct legal standard and is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)). Apart from a legal error, however, the Court must accept the Commissioner's factual findings as conclusive if they are supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts in evidence, or

5

substitute its judgment for that of the ALJ. *See McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). The ALJ must articulate an analysis of the evidence to allow the reviewing court to trace the path of reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ also has a basic obligation to develop a full and fair record, and he or she "must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

## **ANALYSIS**

Plaintiff raises a single argument for reversal of the Commissioner's decision denying him DIB benefits. According to Plaintiff, the evidence shows he suffered from depression in the same time period in which his medical records indicate he was not always compliant with his diabetes medication. Plaintiff asserts that his depression was "work–preclusive" and that the evidence shows he "was sleeping 12-16 hours a day and not maintaining hygiene." [DE 21 at 14]. He argues that the ALJ erred by "comment[ing] on the diabetic non–compliance within the context of how it impacted consistency and credibility" [*id.* at 13 (citing AR 22)], without "mak[ing] the connection between depression and diabetes and … between depression and diabetic non–compliance" [*id.* at 14]. Plaintiff concludes that "[t]he ALJ was required to resolve the non–compliance issue prior to using it as a credibility diminisher." [*Id.*].

In general, a claimant's failure to follow prescribed treatment may be relevant to a claim for disability benefits in two ways. First, an ALJ may deny benefits to an otherwise disabled individual if the claimant is disabled solely because he or she fails to follow prescribed treatment. As SSR 18-3p explains, "an individual who meets the requirements to receive disability … benefits

6

will not be entitled to these benefits if the individual fails, without good cause, to follow prescribed treatment that we expect would restore his or her ability to engage in substantial gainful activity." Social Security Ruling 18-3P, Titles II and XVI: Failure To Follow Prescribed Treatment, 2018 WL 4945641, at *2 (S.S.A. Oct. 2, 2018);[6] *see* 20 C.F.R. § 404.1530(a) ("…. In order to get benefits, you must follow treatment prescribed by your medical source(s) if this treatment is expected to restore your ability to work."). Before applying this rule, however, the ALJ must assess whether the claimant had "good cause" for not following the prescribed treatment. *See* SSR 18-3p, 2018 WL 4945641, at *4-5; *Hampton v. Colvin,* No. 1:12-CV-275-JEM, 2014 WL 523043, at *6 (N.D. Ind. Feb. 7, 2014) ("[A]n ALJ may deny benefits to someone when the only thing preventing him from being able to work is an unjustified refusal to comply with treatment, but Ruling 82–59 [superseded by SSR 18-3p] places a significant burden on the ALJ to confirm that noncompliance is, in fact, the only thing preventing the claimant from working.").

The second way in which a claimant's failure to follow prescribed treatment may be relevant to a claim for disability benefits is in the context of an ALJ's evaluation of the severity of a claimant's alleged subjective symptoms. As SSR 16-3p explains, "[i]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, [the ALJ] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." Social Security Ruling 16-3P, Titles II and XVI: Evaluation Of Symptoms In Disability Claims, 2017 WL 5180304, at *9 (S.S.A. Oct. 25,

---

[6] SSR 18-3p rescinds and replaces SSR 82-59, 1982 WL 31384 (S.S.A. 1982). *See* SSR 18-3p, 2018 WL 4945641, at *1.

2017);[7] *see Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) ("The ALJ may deem an individual's statements less credible if medical reports or records show that the individual is not following the treatment as prescribed."); *Dixon v. Massanari*, 270 F.3d 1171, 1179 (7th Cir. 2001) ("[The ALJ] noted that although [the plaintiff] had elevated blood sugar levels, she did not always comply with dietary recommendations and that her visits to physicians were 'intermittent at best.' Therefore [the ALJ] could have reasonably determined that [the plaintiff's] testimony [about her symptoms] was not credible."). Similar to when the ALJ denies benefits to a disabled individual because of a failure to follow prescribed treatment, however, when an ALJ uses noncompliance in a subjective symptom evaluation, the ALJ must "first consider[ ] any explanations that the individual may provide." *Lovellette v. Barnhart,* No. 1:02-CV-278, 2003 WL 21918642, at *10 (N.D. Ind. June 25, 2003); *see* SSR 16-3p, 2017 WL 5180304, at 9 ("We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints."). And a negative inference about the severity of a claimant's symptoms may not be drawn from evidence of noncompliance "if there are good reasons" for the noncompliance. *Murphy*, 759 F.3d at 816; *see also Perz v. Kijakazi*, No. 2:20-cv-367-JPK, 2022 WL 354694, at *6 (N.D. Ind. Feb. 7, 2022) ("[G]iven the … testimony suggesting Plaintiff may not have been able to afford physical therapy, any inference based on her failure to pursue those treatments should have been accompanied by an inquiry about whether she had the money to do so.").

---

[7] SSR 16-3p rescinds and replaces SSR 96-7p, 1996 WL 374186 (S.S.A. July 2, 1996). *See* SSR 16-3p, 2017 WL 5180304, at *2.

8

Plaintiff cites several cases in which the courts considered whether a negative inference about the severity of a claimant's symptoms was justified in light of the claimant's mental impairments, some of which involve the use of evidence of noncompliance in the context addressed by SSR 18-3p,[8] and some of which involve the use of evidence of noncompliance in the context addressed by SSR 16-3p.[9] While the Plaintiff does not explain which regulation, SSR 18-3p or SSR 16-3p, applies to this case to require the ALJ to have discussed the reasons for his noncompliance, as discussed below only the latter would even arguably apply.  The only place in the ALJ's decision where the ALJ mentions Plaintiff's failure to comply with treatment is in the following discussion:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent with the evidence before the date last insured…. The claimant reported few symptoms from the poor management of his diabetes or blood

---

[8] *See Garrison v. Colvin*, 759 F.3d 995, 1018 n.24 (9th Cir. 2014) ("[W]e do not punish the mentally ill for occasionally going off their medication when the record affords compelling reason to view such departures from prescribed treatment as part of claimants' underlying mental afflictions."); *Martinez v. Astrue,* 630 F.3d 693, 697 (7th Cir. 2011) ("[P]eople with serious psychiatric problems are often incapable of taking their prescribed medications consistently."); *Spiva v. Astrue*, 628 F.3d 346, 351 (7th Cir. 2010) ("The administrative law judge's reference to Spiva's failing to take his medications ignores one of the most serious problems in the treatment of mental illness—the difficulty of keeping patients on their medications."); *Pate-Fires v. Astrue*, 564 F.3d 935, 945 (8th Cir. 2009) (reversing where the ALJ denied benefits on the ground that the plaintiff was disabled solely because of her failure to remain compliant with medications but disregarded the role plaintiff's mental illness played in her noncompliance).

[9] *See Nguyen v. Chater,* 100 F.3d 1462, 1465 (9th Cir. 1996) ("the fact that claimant may be one of millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis on which to conclude that Dr. Brown's assessment of claimant's condition is inaccurate"); *Blankenship v. Bowen,* 874 F.2d 1116, 1124 (6th Cir. 1989) (finding that the claimant's failure to seek psychiatric treatment for his mental condition was not a valid reason for disbelieving his allegations of pain, panic, and depression); *Seamon v Barnhart*, No. 05-C-13-C, 2005 WL 1801406, at *19-20 (W.D. Wis. July 29, 2005) ("[T]he ALJ was relying on [the plaintiff's] testimony [that she quit going to her psychiatrist] to establish one of two points: (1) Plaintiff had not complied with recommended treatment, and therefore her subjective complaints were not credible; or (2) Plaintiff's condition had improved in June 2003 and therefore she was not disabled[.]").

9

>pressure, although his compliance with taking medication, following a diabetic diet, and checking his blood pressure at home was inconsistent per his reports.

[AR 22].[10] SSR 18-3p has no relevance to the quoted discussion as the ALJ did not find that Plaintiff was disabled but then denied benefits based on his failure to comply. Nor does Plaintiff contend that he would have been entitled to benefits had he followed prescribed treatment. Thus, the case law Plaintiff cites under SSR 18-3p is inapposite. *See Luckett v. Astrue,* No. 11-cv-3342, 2012 WL 3485287 (C.D. Ill. Aug. 15, 2012) ("The ALJ found that [the plaintiff] did not have a disabling condition *regardless* of his compliance or noncompliance with his medication." (emphasis added)).

The above-quoted discussion in the ALJ's decision about Plaintiff's treatment noncompliance instead occurs in the context of the ALJ's symptom evaluation, and thus invokes SSR 16-3p. The SSA defines a "symptom" as the individual's "own description of [his] physical or mental impairment." 20 C.F.R. § 404.1502(i). "Subjective allegations of disabling symptoms alone cannot support a finding of disability." *Acevez v. Colvin*, No. 2:13-cv-168-PRC, 2014 WL 3767679, at *11 (N.D. Ind. July 31, 2014); *see* 20 C.F.R. § 404.1529. "When determining disability, the ALJ must weigh these subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1) The individual's daily activities;
(2) Location, duration, frequency, and intensity of pain or other symptoms;
(3) Precipitating and aggravating factors;
(4) Type, dosage, effectiveness, and side effects of any medication;

---

[10] If this is not the language Plaintiff had in mind then the fault lies with Plaintiff for having failed to identify the specific part of the ALJ's decision he finds objectionable. *See Heather M. v. Berryhill*, 384 F. Supp. 3d 928, 936 (N.D. Ill. 2019) ("A district court need not scour the record to make the case of a party who does nothing." (quoting *Herman v. City of Chicago*, 870 F.2d 400, 404 (7th Cir. 1989)).

    (5)    Treatment, other than medication, for relief of pain or other symptoms;

    (6)    Other measures taken to relieve pain or other symptoms;

    (7)    Other factors concerning functional limitations due to pain or other symptoms."

*Acevez*, 2014 WL3767679, at *11; *see* 20 C.F.R. § 404.1529(c). An ALJ must adequately explain how an evaluation of these factors led to the result in the decision. *Acevez*, 2014 WL3767679, at *11.

The above framework for evaluating a claimant's subjective symptom reports does not "assess[ ] the 'credibility' of an applicant's statements, but [ ] instead focus[es] on determining the 'intensity and persistence of [the applicant's] symptoms.'" *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (quoting SSR 16-3p); *see Kniola v. Berryhill,* No. 2:16-CV-506-PRC, 2018 WL 1318317, at *4 (N.D. Ind. Mar. 14, 2018) ("Under SSR 16-3p, an ALJ now assesses a claimant's subjective symptoms rather than assessing his 'credibility.'"). The SSA "eliminat[ed] the use of the term 'credibility' from [its] sub–regulatory policy" and "clarif[ied] that subjective symptom evaluation is not an examination of an individual's character." *Cole,* 831 F.3d at 412 ("The change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character."). Notwithstanding any possible suggestion to the contrary from Plaintiff's characterization of the ALJ's analysis as involving use of noncompliance as a "credibility-diminisher," the ALJ properly evaluated Plaintiff's symptoms pursuant to the factors outlined in 20 C.F.R. § 404.1529(c) and SSR 16-3p, without assessing "credibility" in the older sense. *See Rochelle D.H. v. Comm'r of Soc. Sec.,* No. 1:19-CV-243-MGG, 2021 WL 912932, at *2 n.2 (N.D. Ind. Mar. 10, 2021).[11] That is, a review of the ALJ's decision demonstrates that at no point did the

---

[11] "Although the Social Security Administration couched SSR 16-3p as a clarification, [courts have noted that] it represents a significant change in how ALJs must decide cases," in that it "eliminates the entire section entitled 'Credibility' in SSR 96–7p and, <u>instead of</u> requiring analysis of a claimant's credibility, instructs ALJs to determine 'the extent to which ... symptoms can

11

ALJ "cross[ ] the line from a permissible evaluation of plaintiff's assertions (the accuracy of [his] testimony) to an impermissible evaluation of the plaintiff [himself] ([his] truthfulness)." *Terry*, 2021 WL 930683, at *5.

The ALJ began with a discussion of Plaintiff's testimony regarding his subjective symptoms:

> In testimony, the claimant reported he last worked at Walmart for almost four years, first as a sales associate in the home and garden department and then later as a stocker. He added he stopped working at Walmart in 2008 because he did not like how the store was run and that was causing stress. He stated he had a driver's license prior to the date last insured but that it is currently expired. He noted he has been diagnosed with diabetes since 2003, adding he would sometimes forget to take his medication at times, but that he has overall been generally compliant with his diabetic medications. He struggled to recall specific details of his functioning prior to the date last insured, but he estimated that he was able to walk only short periods, noting he would have pain walking through the grocery store, he could stand for maybe half an hour, and he could lift or carry 3-5 pounds. He added he would avoid stairs as much as possible. He discussed depression, stating he went to Bowen Center for a while and they put him on medication that initially helped but later had an opposite effect on him. He recalled being so depressed at one time that he went three weeks without showering. He indicated at that time he was able to cook for himself, grocery shop and perform household chores, but he denied caring for any pets or engaging in any hobbies at that time. He stated that at that time he was sleeping a lot due to depression, sometimes 12-16 hours a day.

---

reasonably be accepted as consistent with the objective medical and other evidence in the [claimant's] record.' This shift in focus from a more general analysis of a claimant's truthfulness to an objective comparison of a claimant's statements to the evidence of record changes two decades of SSA policy (and ALJ practice) regarding the evaluation of the intensity, persistence, and limiting effects of a claimant's symptoms." *Terry v. Saul,* Civil Action No. 1:19-00912, 2021 WL 930683, at *4–5 (S.D.W. Va. Mar. 11, 2021) (internal quotation marks omitted) (quoting *Bagliere v. Colvin*, No. 1:16-CV-109, 2017 WL 318834, at *7 (M.D.N.C. Jan. 23, 2017) (emphasis in original) (citation omitted)). The Seventh Circuit observed in *Cole,* however, that "obviously administrative law judges will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." 831 F.3d at 412 (emphasis in original).

> He also recalled having some urinary frequency during that period, sometimes up to ten times per day.

[AR 22]. It is true that the ALJ followed this summary with "boilerplate language" that the Seventh Circuit has criticized as "meaningless." *Murphy*, 759 F.3d at 816; *see* [AR 22]. But "simply because the ALJ used boilerplate language does not automatically undermine or discredit the ALJ's ultimate conclusion if [the decision] otherwise points to information that justifies" the ALJ's analysis. *Id.* (internal quotation marks and citation omitted); *see also Shumaker v. Colvin*, 632 F. App'x 861, 867 (7th Cir 2015) (same). Here the ALJ did that.

In evaluating Plaintiff's symptom testimony, the ALJ considered medical source evidence, which included statements concerning his symptoms that Plaintiff made to his medical providers during the time period under consideration. *See* SSR 16-3p, 2017 WL 5180304, at *6 (if the ALJ "cannot make a disability determination or decision that is fully favorable based on objective medical evidence," then the ALJ must consider "other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms[,]" including statements made by the claimant "about [his] symptoms directly to medical sources"). The ALJ began by noting that, in the time period under consideration, Plaintiff "was treated for diabetes mellitus with some use of insulin, some back pain, and hypertension." [AR 22]. The ALJ noted that Plaintiff's medical records showed that he "had variable blood sugar control during the period at issue, with hemoglobin A1c readings varying from '7.3' to '10.'" [*Id.*]. Then, the ALJ said (in the sentence on which Plaintiff bases his appeal) that Plaintiff "reported few symptoms from the poor management of his diabetes or blood pressure, although his compliance with taking medication, following a diabetic diet, and checking his blood pressure at home was inconsistent per his reports." [*Id.*]. While the sentence could have been written more clearly, the ALJ was merely describing the reports in Plaintiff's medical records, i.e., that Plaintiff reported that he was

13

suffering few symptoms even though he also reported he did not always comply with taking medication, following a diabetic diet, and checking his blood pressure at home. This sentence does not say or suggest that Plaintiff's allegations of severe symptoms were inconsistent with his failure to seek treatment or his noncompliance with prescribed treatment. Instead, it states or suggests that Plaintiff's allegations of severe symptoms were inconsistent with Plaintiff's symptoms reports to his medical providers of only a "*few*" symptoms. "The ALJ noted that [Plaintiff's] medical evidence stated that he was not compliant with his diabetes medicine at various times, but the ALJ found that [Plaintiff reported few symptoms] even with his noncompliance." *Luckett,* 2012 WL 3485287, at *11. The "credibility diminisher," using Plaintiff's words, was the symptom reports to the medical providers, *not*, as Plaintiff argues, the failure to follow prescribed treatment. The ALJ was entitled to rely on Plaintiff's few symptom reports to his medical providers as being inconsistent with his testimony concerning the severity, frequency, and limiting effects of his symptoms. SSR 16-3p, 2017 WL 5180304, at *6 (other evidence that the ALJ may consider in evaluating a claimant's subjective symptom reports include "statements about symptoms directly to medical sources"). Plaintiff inaccurately describes the ALJ's decision as finding that his symptom testimony was inconsistent with his failure to follow prescribed treatment. The ALJ did not make that finding, so the ALJ did not have to inquire about why Plaintiff failed to follow prescribed treatment.

Insofar as the ALJ's reliance on evidence that Plaintiff did not report many symptoms to his medical providers is concerned, Plaintiff does not argue that the ALJ cherry-picked from his medical records, and the Court's own review of those records shows that the ALJ did not cherry–pick. Plaintiff's medical notes repeatedly state that Plaintiff reported "he ha[d] no HA's dizziness, vision changes, tinnitus, syncope, edema or CP." [AR 438 (March 28, 2011); AR 441 (December

21, 2010); AR 454 (July 26, 2010)]. He also denied suffering "s/s hypo/hyperglycemia" [AR 441 (December 21, 2010); AR 454 (July 26, 2010)], or "paresthesia or LEs or urinary problems" [AR 423 (February 1, 2012)]. On December 10, 2012, Plaintiff's hypertension was stable, and he complained only of a recurrent cough. [AR 400]. He denied asthma, fever, chills, or night sweats. [AR 400]. No medical records show symptom reports inconsistent with the ALJ's observations.

Moreover, Plaintiff's hearing testimony also was consistent with the ALJ's observations about symptom reports in his medical records. The ALJ asked Plaintiff how his diabetic condition from 2008 to 2013 affected him, and his only response was that he was not on insulin at that time. [AR 44-45, 48]. He testified that he took his medications as prescribed, and would go off of them "on a very rare occasion." [AR 48]. He denied having any dizziness or feeling light–headedness in the relevant time period. [AR 46]. He did testify that he suffered from neuropathy, which gave him sharp pains in his feet and sometimes his hands, but he also testified that he did not take any medicine for the pain. [AR 45-46]. Similarly, he testified to occasional lower back pain, which he said was treatable with Tylenol, although it sometimes affected his ability to stand or walk. [AR 47]. In all, and despite the ALJ's repeated questions asking about diabetes–related symptoms, Plaintiff related very few subjective symptoms from his diabetes in the relevant time period.[12]

---

[12] The ALJ's finding of few symptoms despite lack of compliance is also supported by statements Plaintiff made in a phone interview with SSA personnel in December 2019. *See* SSR 16-3p, 2017 WL 5180304, at *7 (in evaluating the claimant's symptoms, the ALJ should also "consider any statements in the record noted by agency personnel who previously interviewed the individual, whether in person or by telephone"). Plaintiff reported that prior to 2013, he was working at Walmart, had his own apartment and maintained it, paid his bills, did his own laundry and shopping, cooked for himself, and was able to drive. [AR 297]. The Seventh Circuit has criticized ALJs who infer an ability to perform full-time work from an ability to perform activities of daily living. *See Stark v. Colvin*, 813 F.3d 684, 688 (7th Cir. 2016); *Moore*, 743 F.3d at 1126; *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). "But that is not what the ALJ did [here]. Rather, the ALJ evaluated [Plaintiff's] daily activities against [his] asserted impairments in assessing whether [he] was exaggerating the effects of [his] impairments." *Shumaker*, 632 F. App'x at 866 (citing, inter alia, 20 C.F.R. § 404.1529(c)(3)(i) (explaining that the agency will consider daily activities

Plaintiff describes his depression as "work–preclusive." But the Court notes that Plaintiff does not affirmatively argue that the ALJ should have imposed greater restrictions on his ability to work based on his mental limitations caused by his depression. Instead, he appears to use the descriptive term "work-preclusive" for rhetorical purposes only, as he makes no attempt to show that his depression was in fact "work-preclusive." To the extent that Plaintiff intended to make some sort of argument claiming error in the ALJ's RFC findings related to his depression, a "fleeting mention" of the depression being "work-preclusive" is insufficient to do so. *Vang v. Saul,* 805 F. App'x 398, 403 (7th Cir. 2020) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority." (quoting *M.G. Skinner & Assocs. Ins. Agency v. Norman-Spencer Agency*, 845 F.3d 313, 321 (7th Cir. 2017)); *see also Garza v. Kijakazi,* No. 21-2164, 2022 WL 378663, at *3 (7th Cir. Feb. 8, 2022) ("Garza's meager treatment of this argument constitutes waiver."); *Krell v. Saul*, 931 F.3d 582, 586–87 n.1 (7th Cir. 2019) (where a party does no more than "allude to" an argument, court will not consider it). In any event, the ALJ considered Plaintiff's complaints about depression in the context of the record as a whole [AR 19-20, 22-23], including largely normal mental status findings [AR 479-80, 482-84, 486], and reports of good functioning during the relevant period [AR 297-298, 479, 482, 486]. The ALJ properly concluded Plaintiff's mental functioning was not as limited by his depression as he alleged. [AR 19-20].

---

in evaluating the severity of the claimant's symptoms); *Pepper v. Colvin*, 712 F.3d 351, 369 (7th Cir. 2013) (agreeing with ALJ's reasoning that claimant's daily activities undermined her testimony about extent of her symptoms))); *see also Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) (noting that ALJ discussed claimant's performance of activities of daily living but did not equate it with ability to work); *John S. v. Saul*, No. 1:19-cv-1008-DLP-JRS, 2020 WL 428093, at *9 (S.D. Ind. Jan. 27, 2020) (similar); SSR 16-3p, 2017 WL 5180304, at *7 (directing ALJ to consider daily activities in evaluating the intensity, persistence, and limiting effects of the claimant's symptoms).

In sum, *assuming*, as Plaintiff argues, that his depression affected his compliance with medicines and/or diet prescribed to treat his diabetes mellitus, as has been discussed the ALJ did not discredit Plaintiff's reported symptoms from his diabetes on the basis of that noncompliance. Rather, the ALJ found that the evidence (including Plaintiff's statements to his medical providers) showed that Plaintiff did not suffer severe symptoms from his diabetes regardless of his apparent lack of compliance with medication. The ALJ found that Plaintiff's symptom testimony was inconsistent with other evidence in the record, including Plaintiff's few reports of serious symptoms to his medical providers, not that his symptom testimony was inconsistent with his past noncompliance with prescribed treatment.

The ALJ's finding regarding Plaintiff's limitations from his diabetes is conclusive if supported by substantial evidence. *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005). This Court "does not substitute its judgment for that of the ALJ, and an ALJ's decision will be upheld where there exists such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted). Plaintiff does not challenge the ALJ's RFC on the basis that it is not supported by substantial evidence, i.e., that a reasonable mind could not accept the RFC as adequate. He instead makes only a "logical bridge" argument attacking the ALJ's reasoning for discounting Plaintiff's alleged limitations from his diabetes. But there was no error in the ALJ's passing comment on Plaintiff's noncompliance. Accordingly, Plaintiff has not shown any grounds for reversing the ALJ's determination that Plaintiff was not disabled in the time period between March 10, 2008 and June 30, 2013.

## **CONCLUSION**

Based on the foregoing, the Commissioner's final decision is **AFFIRMED**.

ORDERED this 19th day of September, 2022.

                                          s/ Joshua P. Kolar
                                          MAGISTRATE JUDGE JOSHUA P. KOLAR
                                          UNITED STATES DISTRICT COURT